JUDGE SWEET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TRANSCOM SHIPPING N.V.,                               :

               Plaintiff,                              :

    - against -                                          :

KYE INTERNATIONAL GENERAL TRADING LLC,               :

              Defendant.                             :

------------------------------------------------------------------X

09 CV 8527

RECEIVED
OCT 07 2009
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff TRANSCOM SHIPPING N.V., (hereinafter "Transcom" or "Plaintiff") by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant KYE INTERNATIONAL GENERAL TRADING LLC (hereinafter "KYE" or "Defendant") alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contracts. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

2.     At all times material to this action, TRANSCOM SHIPPING N.V. was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Antilles, The Netherlands, and was the owner of the motor vessel "TEOS," (hereinafter the "Vessel") pursuant to a charter party dated June 23, 2009. *See copy of "TEOS" charter party (the "Charter Party") annexed hereto as Exhibit "1."*

3.     Upon information and belief, KYE was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Dubai, United Arab Emirates.

4.    By the terms of Clauses 10, 11 and 12 of Part 1 of the Charter Party, Plaintiff chartered the Vessel to Defendant for the carriage of "MIMIMUM/MAXIMUM 9500/9700 METRIC TONS UP TO FULL AND COMPLETE IN OWNERS' OPTION CEMENT IN BIG BAGS" from Antalya, Turkey to Onne, Nigeria.

5.    Pursuant to the Clause 20 of Part 1 of the Charter Party, Defendant agreed to pay demurrage[1]   at the rate of $6,000.00 per day / pro rata.

6.    Plaintiff delivered the Vessel into the service of the Defendant and fully performed all duties and obligations under the Charter Party.

7.    Pursuant to Clause 18 of the additional rider clauses of the Charter Party, Defendant was required to pay all discharge port expenses.

8.    Prior to arrival at the discharge port, on or about July 26, 2009, the Vessel was advised by Defendant's local agent that Defendant failed to pay discharge port expenses, that, therefore, the Vessel was not allowed to berth, and that the Vessel should steam a minimum of 40 nautical miles away to avoid piracy attacks, with which the Vessel complied.

9.    A few days later, on or about July 30, 2009, Defendant's local agent instructed the Vessel to proceed to the pilot station, ready for berthing, with which the Vessel complied.

10.    The next day, the Vessel was informed that payment of discharge port expenses could not be traced and that, therefore, the Vessel was not allowed to berth. Consequently, the Vessel proceeded back to its safe position away from the pilot station. However, a vessel near the "safe position" was attacked by pirates, so the Vessel proceeded an additional 20 nautical miles for her safety.

---

[1] Demurrage is a liquidated damage for delay set forth in the charter party that requires a charterer to pay to owner when the vessel is prevented from the loading or discharging of cargo within the stipulated laytime (i.e., the maximum time permitted in the charter party for cargo operations)– here stipulated by the parties as $6,000 pdpr.

11.     Again, on or about August 10, 2009, the Defendant's local agent instructed the Vessel to proceed to the pilot station, ready for berthing, with which the Vessel complied.  Due to Defendant's non- payment of discharge port expenses, the Vessel was not allowed to berth and proceeded back to its safe position 60 miles away.

12.     The Vessel eventually berthed on August 15, 2009.

13.     Due to Defendant's delays in payment of discharge port expenses, approximately $20,801.20 worth of IFO/MDO fuel was consumed by the Vessel proceeding back and forth between the pilot station and a safe position.

14.     A dispute arose between the parties regarding Defendant's failure to pay demurrage and extra fuel payments due and owing to Plaintiff under the Charter Party.

15.     As a result of Defendant's breach of the Charter Party due to its failure to pay demurrage and extra fuel payments of the Vessel, Plaintiff has sustained damages in the total principal amount of $160,155.61, exclusive of interest, arbitration costs and attorneys fees. *See Invoice, Laytime Calculation and Statement of Facts annexed hereto as Exhibit "2."*

16.     To date, and despite due demand, Defendant has refused and/or failed to pay outstanding demurrage and extra fuel payments due and owing under the Charter Party in the total sum of $160,155.61.

17.     Pursuant to the Charter Party, disputes between the parties are to be submitted to arbitration in London subject to English law.  Plaintiff intends to commence arbitration of its claim against Defendant.

18.     This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of London arbitration proceedings.

19.     As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

a.     Principal Claim -

| | | |
|---|---|---|
| Demurrage: | $139,354.41 | |
| Extra Fuel: | $20,801.20 | |
| Total Principal Claim: | | $160,155.61 |

b.     Interest on principal claim:
(2 years compounded annually at 3.25 %)         $ 10,579.28

c.     Estimated recoverable arbitration costs and fees:     $ 30,000.00

**Total:**                                                                      **$200,734.89**

20.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "3."*

21.     The Plaintiff seeks an Ex Parte Order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE,** Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards as codified at 9 U.S.C. § 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award, or judgment based thereon, rendered on the claims had herein as a Judgment of this Court;

C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Ex Parte Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount **$200,734.89** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.     That this Court enter Judgment against Defendant on the claims set forth herein;

E.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

G.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: October 7, 2009

The Plaintiff,
TRANSCOM SHIPPING N.V.

By: _____
Nancy R. Siegel
Charles E. Murphy
Coleen A. McEvoy
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
nrs@lenmur.com
cem@lenmur.com
cam@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut   )
                     )    ss.:    Town of Southport.
County of Fairfield     )

1.  My name is Nancy R. Siegel.

2.  I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.  I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.  I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.  The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.  The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.  I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     October 7, 2009

Nancy R. Siegel

# EXHIBIT 1

| **1.Shipbroker**<br>**Sudoservice Shipping Consultancy and Trading Ltd.**<br>**Shipping Agency  License Nr. 0214**<br>**Acibadem Cad.  Ibrahimaga Is Bankasi Konutlari**<br>**A-2 Blok  D. 3   Kadikoy - Istanbul / TURKEY**<br>**Phn: +90 216 327 59 03 - 04   Fax: +90 216 327 65 93**<br>**chartering@sudoservicesshipping.net** | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 AND 1994)<br>(To be used for trades for which no specially approved form is force)<br>CODE NAME: "GENCON"<br><br>Part I |
|---|---|
| **3. Owners/Place of business (Cl. 1)**<br><br>**TRANSCOM SHIPPING NV NETHERLAND ANTILLES, AS HEADOWNERS** | **2. Place and date**<br>**ISTANBUL, 23/06/2009** |
| **5. Vessel's name**<br>**M / V "TEOS"** | **4. Charterers/Place of business (Cl. 1)**<br><br>**K.Y.E INTERNATIONAL GENERAL TRADING L.L.C – DUBAI** |
| **7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)**<br><br>**10082 DWT ON 7,82 MTR** | **6. GT/NT (Cl. 1)**<br>**8205 / 4220** |
| **8. Expected ready to load (abt.) (Cl. 1)**<br>**29 JUNE 2009** | **8. Present position (Cl. 1)**<br><br>**- ETB ALEXANDRIA ON 24TH OF JUNE WP/IAGW**<br>**- ETC/S ON 27TH OF JUNE WP/IAGW**<br>**- ETA ANTALYA 28-29 OF JUNE WP/IAGW** |
| **10. Loading port or place (Cl. 1)**<br>**1 SAFE PORT SAFE BERTH ALWAYS AFLOAT ANTALYA PORT TURKEY**<br><br>**OWNERS CONFIRM THAT THEY HAVE CHECKED LOAD PORT BERTH(S) AND HAVE SATISFIED THEMSELVES THAT THEIR VESSEL IS SUITABLE IN ALL RESPECTS FOR THIS TRADE AT THIS TIME IN THESE PORTS.** | **11. Discharging port or place (Cl. 1)**<br>**1 PORT  1 CHARTERERS BERTH, ANCHORAGE OR PLACE IN CHARTERERS'OPTION ONNE PORT/ NIGERIA INTENTION "FOT" TERMINAL NOT ALWAYS AFLOAT BUT SAFELY AGROUNDED**<br>**OWNERS CONFIRM THAT THEY HAVE CHECKED DISCHARGE PORT/ BERTH(S) AND HAVE SATISFIED THAT THEIR VESSEL IS SUITABLE IN ALL RESPECTS FOR THIS TRADE AT THIS TIME IN THESE PORTS.** |
| **12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**<br>**MINIMUM /MAXIMUM 9500 /9700  METRIC TONS UP TO FULL AND COMPLETE IN OWNERS' OPTION  CEMENT IN BIG BAGS – AS SOLE CARGO**<br>**EXACT QUANTITY TO BE ADVISED BEFORE COMENCEMENT OF LOADING**<br>**OWNERS TO GUARANTEE THAT THE VESSEL'S DWCC FOR THIS VOYAGE/FOR CHARTERERS DESCRIBED SOLE CARGO IS MINIMUM 9500 MTS AND OWNERS GUARANTEE THAT VESSEL CAN LOAD/STOW THIS QUANTITY OF CHARTERERS' DESCRIBED CARGO. OWNERS UNDERSTAND THAT ANY FAILURE BY THE VESSEL TO LIFT THIS GUARANTED MAXIMUM QUANTITY WILL RESULT IN A CLAIM FOR DAMAGES.**<br>**ONE PORT LOAD AND ONE PORT DISCHARGE ONLY.** ||
| **13. Freight rate(also state if payable on delivered or in taken quantity) (Cl.4)**<br><br>**USD 41.00 PER MT 1/1 FREE IN/OUT STOWED, LASHED, SECURED AND DUNNAGED + FREE ACTUAL PROFORMA DISBUSEMENT ACCOUNT AT DISCHARGE PORT  TO BE PAID BY CHARTERERS/RECEIVERS.** | **14. Freight payment (state currency and method of payment, also beneficiary and bank account) (Cl. 4)**<br><br>**SEE CLAUSE 41** |
| **15. State if vessel's cargo handling gear shall not be used (Cl. 5)**<br>**SHIP'S GEAR TO BE USED ONLY AT DISCHARGE PORT.** | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b) If total laytime for load. and disch., fill in c) only) (Cl. 6)** |
| **17. Shippers/Place of business(CL 6)**<br>**–** | **a) Laytime for loading**<br>**SEE CLAUSE 19** |
| **18. Agents (loading) (Cl. 6)**<br>**SEE CLAUSE 22** | **b) Laytime for discharging**<br>**SEE CLAUSE 19** |
| **19. Agents (discharging) (Cl. 6)**<br>**SEE CLAUSE 22** | **c) Total laytime for loading and discharging**<br>**---** |
| **20. Demurrage rate manner payable (loading and discharging) (Cl. 7)**<br><br>**USD 6000 PER DAY / PRO RATA – FREE DESPATCH** | **21. Cancelling date (Cl. 9)**<br>**30 JUNE 2009** |
| | **22. General Average to be adjusted at (Cl. 12)**<br>**LONDON AS PER YORK ANTWERP RULES 1994** |
| **23. Freight Tax (state if for the Owner's account) (Cl. 13(b))**<br>**TO BE FOR OWNERS' ACCOUNT.** | **24. Brokerage commission and to whom payable (Cl. 15).**<br><br>**2.50 PERCENT TOTAL COMMISSION (INCLUDING ADDRESS COMMISSION) TO BE PAYABLE BY OWNERS ON FREIGHT/ DEADFREIGHT/ DEMURRAGE** |
| **25. Law and Arbitration (state 19 (a), 19 (b), or 19 (c); if 19 (c) agreed also state Place of Arbitration) (if not fitted in 19(a) shall apply 19(c)).**<br>**TO BE SETTLED IN LONDON,ENGLISH LAW TO APPLY, LMAA SMALL CLAIMS PROCEDURE TO APPLY** | |
| **(a) State maximum amount for small claims/shortened arbitration (Cl. 19).** | **26. Additional clauses covering special provision, if agreed.**<br>**ADDITIONAL CLAUSES 18/53 ARE DEEMED TO BE INCORPORATED AND FORM PART OF THIS CHARTER PARTY.** |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II.
In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signatures (Owners) | Signatures (Charterers) |
|---|---|
| TRANSCOM SHIPPING N.V.<br>CURAÇAO | |

PART II
"Gencon" Charter ( As Revised 1922,1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as Owners of the Vessel 1
named in Box, 5 of the GT/ NT indicated in Box 6 and carrying about the number 2
of metric tons of deadweight capacity all told on summer loadline stated in Box 3
7, now in position as stated in Box 8 and expected ready to load under this 4
Charter Party about the date indicated in Box 9, and the party mentioned as the 5
Charterers in Box 4 that: 6
The said Vessel shall, as soon as her prior commitments have been completed, 7
proceed to the loading port(s) or place(s) stated in Box 10 or so *near thereto as* 8
*she may safely get and lie always afloat,* and there load a full and complete 9
cargo *(if shipment of deck cargo agreed same to be at Charterers' risk and* 10
*responsibility)* as stated in Box 12, which the Charterers bind themselves to 11
ship, and being so loaded the vessel shall proceed to the discharging port(s) or 12
place(s) stated in Box 11 as ordered on signing Bills of Lading, or *so near* 13
*thereto* as she may safely get and lie always afloat, and deliver the cargo. 14

2. Owners Responsibility Clause 15
The Owners are to be responsible for loss of or damage to the goods or for 16
delay in delivery of the goods only in case the loss, damage or delay has been 17
caused by personal want of due diligence on the part of the Owners or their 18
Manager to make the Vessel in all respects seaworthy and to secure that she is 19
properly manned, equipped and supplied, or by the personal act or default of 20
the Owners or their Manager. 21
And the Owners are responsible for loss, damage or delay arising from any 22
other cause whatsoever, even from the neglect or default of the Master or crew 23
or some other person employed by the Owners on board or ashore for whose 24
acts they would, but for this Clause, be responsible, or from unseaworthiness of 25
the Vessel on loading or commencement of voyage or at any time 26
whatsoever. 27

3. Deviation Clause 28
The vessel has liberty to call at any port or ports in any order, for any purpose, 29
to sail without pilots, to tow and/or assist Vessels in all situations, and also to 30
deviate for the purpose of saving life and/or property. 31

4. Payment of Freight 32
(a) The freight at the rate stated in Box13 shall be paid in cash calculated on the 33
intaken quantity of cargo. 34
(b) *Prepaid.* If according to Box 13 freight is to be paid on shipment, it shall be 35
deemed earned and non-returnable, Vessel and/or cargo lost or not lost. 36
Neither the Owners nor their agents shall be required to sign or endorse bills of 37
lading showing freight prepaid unless the freight due to the Owners has 38
actually been paid. 39
*(c) On delivery. If according to Box 13 freight,  or part thereof,  is payable at* 40
*destination  it  shall  not be  deemed  earned  until  the  cargo is thus delivered.* 41
*Notwithstanding the provisions under (a), if freight or part thereof is payable on* 42
*delivery of the cargo the Charterers shall have the option of paying the freight* 43
*on delivered weight/quantity provided such option is declared before breaking* 44
*bulk and the weight/quantity can be ascertained by official weighing machine,* 45
*joint draft survey or tally.* 46
*Cash for Vessel's ordinary disbursements at the port of loading to be advanced* 47
*by the Charterers, if required, at highest current rate of exchange, subject to* 48
*two (2) per cent to cover insurance and other expenses.* 49

5. Loading/Discharging 50
(a) Costs/Risks 51
The cargo shall be brought into the holds, loaded, stowed and/ or trimmed 52
tallied, lashed and/or secured and taken from the holds and discharged by the 53
Charterers, free of any risk, liability and expense whatsoever to the Owners. 54
The Charterers shall provide and lay all dunnage material as required for the 55
proper stowage and protection of the cargo on board, the Owners allowing the 56
use of all dunnage available on board. The Charterers shall be responsible for 57
and pay the cost of removing their dunnage after discharge of the cargo under 58
this Charter Party and time to count until dunnage has been removed. 59
(b) Cargo Handling Gear 60
Unless the Vessel is gearless or unless it has been agreed between the parties 61
that the Vessel's gear shall not be used and stated as such in Box 15, the 62
Charterers shall throughout the duration of *loading/*discharging give free use of 63
the Vessel's cargo handling gear and of sufficient motive power to operate all 64
such cargo handling gear. All such equipment to be in  good working order. 65
Unless caused by negligence of the stevedores, time lost by breakdown of the 66
Vessel's cargo handling gear or motive power - pro rata the total number of 67
cranes/ winches required at that time for the loading/ discharging of cargo 68
under this Charter Party - shall  not count  as  laytime or time on demurrage. 69
On request the Owners shall provide free of charge craneman/winchman from 70
the crew to operate the Vessel's cargo handling gear, unless local regulations 71
prohibit this,  in which latter event shore labourers shall be for the account of the 72
Charterers. Cranemen/ winchmen shall be under the Charterers' risk and 73
responsibility and as stevedores to be deemed  as  their servants but shall 74

always work under the supervision of the Master. 75
(c) Stevedore Damage 76
The Charterers shall be responsible for damage (beyond ordinary wear and 77
tear) to any part of the Vessel caused by Stevedores. Such damage shall be 78
notified as soon as reasonably possible by the Master to the Charterers or their 79
agents and to their Stevedores, failing which the Charterers shall not be held 80
responsible. The Master shall endeavour to obtain the Stevedores' written 81
acknowledgement of liability. 82
The Charterers are obliged to repair any stevedore damage prior to completion 83
of the voyage, but must repair stevedore damage affecting the Vessel's 84
seaworthiness or class before the Vessel sails from the port where such 85
damage was caused or found. All additional expenses incurred shall be for the 86
account of the Charterers and any time lost shall be for the account of and shall 87
be paid to the Owners by the Charterers at the demurrage rate. 88

6. Laytime 89
* (a)Seperate laytime for loading and discharging 90
The cargo shall be loaded within the number of running days/ hours as 91
indicated in Box 16, weather permitting, Saturdays, Sundays and holidays 92
excepted,
*unless even if used, in which event time used shall count.* 93
The cargo shall be discharged within the number of running days/ hours as 94
indicated in Box 16, weather permitting, Saturdays, Sundays and holidays 95
excepted,
*unless even if used, in which event time used shall count.* 96
* (b)Total laytime for loading and discharging 97
*The cargo shall  be  loaded  and  discharged within the number of total running* 98
*days/ hours as indicated in Box 16, weather permitting, Sundays and holidays* 99
*excepted, unless used, in which event time used shall count.* 100
* (c)Commencement of laytime (loading and discharging) 101
Laytime for loading and discharging shall commence at 13.00 14.00 hours, if 102
notice of
readiness is given up to and including 12.00 hours,  and at  06.00 08.00 hours 103
next
working day  if  notice given during  office hours after  12.00 hours. Notice of 104
readiness at loading port to be given to the Shippers named in Box 17 or if not 105
named, to the Charterers or their agents named in Box 18. Notice of readiness 106
at the discharging port to be given to the Receivers or, if not known, to the 107
Charterers or their agents named in Box 19. 108
If the loading/ discharging berth is not available on the Vessel's arrival at or off 109
the port of loading/ discharging, the Vessel shall be entitled to  give notice of 110
readiness within ordinary office hours on arrival there, whether in free pratique 111
or not, whether customs cleared or not. Laytime or time on demurrage shall 112
then count as if she were in berth and in all respects ready for loading/ 113
discharging provided that the Master warrants that she is in fact ready in all 114
respects. Time used in moving from the place of waiting to the loading/ 115
discharging berth/anchorage shall not count as laytime. 116
If, after inspection, the Vessel is found not to be ready in all respects to load/ 117
discharge time lost after the discovery thereof until the Vessel is again ready to 118
load/ discharge shall not count as laytime. 119
Time used before commencement of laytime shall  not count. 120
* Indicate alternative (a) or (b) as agreed, in Box 16. 121

7. Demurrage 122
Demurrage at the loading and discharging port is payable by the Charterers at 123
the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for 124
any part of day. Demurrage shall fall due day  by  day  and shall  be payable 125
upon receipt of the Owners' invoice. 126
In the event the demurrage is not paid in accordance with the above, the 127
Owners shall give the Charterers 96 running hours written notice to rectify the 128
failure. If  the demurrage is not paid at the expiration of this time limit and  if the 129
vessel is in or at the loading port, the Owners are entitled at any time to 130
terminate the Charter Party and claim damages for any losses caused thereby. 131

8. Lien Clause 132
The Owners shall have a lien on the cargo  and on all sub-freights payable in 133
respect of the cargo, for freight, deadfreight, demurrage, *claims for damages* 134
and for all other amounts due under this Charter Party including  costs of 135
recovering same. 136

9. Cancelling Clause 137
(a) Should the Vessel not be ready to load (whether in berth or not) on the 138
cancelling date indicated in Box 21, the Charterers shall have the option of 139
cancelling this Charter Party. 140

(b) Should the Owners anticipate that, despite the exercise of due diligence, 141
the Vessel will not be ready to load by the cancelling date, they shall notify the 142
Charterers thereof without delay stating the expected  date of the Vessel's 143

PART II
"Gencon" Charter ( As Revised 1922,1976 and 1994)

readiness to load and asking whether the Charterers will exercise their option 144
of cancelling the Charter Party, or agree to a new cancelling date. 145
Such option must be declared by the Charterers within 48 running hours after 146
the receipt of the Owners' notice. If the Charterers do not exercise their option 147
of cancelling, then this Charter Party shall be deemed to be amended such that 148
the seventh day after the new readiness date stated in the Owners' notification 149
to the Charterers shall be the new cancelling date. 150
The provisions of sub-clause (b) of this Clause shall operate only once, and in 151
case of the Vessel's further delay, the Charterers shall have the option of 152
cancelling the Charter Party as per sub-clause (a) of this Clause. 153

**10. Bills of Lading** 154
Bills of Lading shall be presented and signed by the Master as per the 155
"Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter 156
Party, or by the Owners' agents provided written authority has been given by 157
Owners to the agents, a copy of which is to be furnished to the Charterers. The 158
Charterers shall indemnify the Owners against all consequences or liabilities 159
that may arise from the signing of bills of lading as presented to the extent that 160
the terms or contents of such bills of lading impose or result in the imposition of 161
more onerous liabilities upon the Owners than those assumed by the Owners 162
under this Charter Party. 163

**11. Both-to-Blame Collision Clause** 164
If the Vessel comes into collision with another vessel as a result of the 165
negligence of the other vessel and any act, neglect or default of the Master, 166
Mariner, Pilot or the servants of the Owners in the navigation or in the 167
management of the Vessel, the owners of the cargo carried hereunder will 168
indemnify the Owners against all loss or liability to the other or non-carrying 169
vessel or her owners in so far as such loss or liability represents loss of, or 170
damage to, or any claim whatsoever of the owners of said cargo, paid or 171
payable by the other or non-carrying vessel or her owners to the owners of said 172
cargo and set-off, recouped or recovered by the other or non-carrying vessel 173
or her owners as part of their claim against the carrying Vessel or the Owners. 174
The foregoing provisions shall also apply where the owners, operators or those 175
in charge of any vessel or vessels or objects other than, or in addition to, the 176
colliding vessels or objects are at fault in respect of a collision or contact. 177

**12. General Average and New Jason Clause** 178
General average shall be adjusted in London unless otherwise agreed in Box 179
22 according to York-Antwerp Rules 1994 and any subsequent modification 180
thereof. Proprietors of cargo to pay the cargo's share in the general expenses 181
even if same have been necessitated through neglect or default of the Owners' 182
servants (see clause 2). 183
If General Average is to be adjusted in accordance with the law and practice of 184
the United States of America, the following Clause shall apply: "In the event of 185
accident, danger, damage or disaster before or after the commencement of the 186
voyage, resulting from any cause whatsoever, whether due to negligence or 187
not, for which, or for the consequence of which, the Owners are not 188
responsible, by statute, contract or otherwise, the cargo shippers, consignees 189
or owners of the cargo shall contribute with the Owners in General Average 190
to the payment of any sacrifices, losses or expenses of a General Average 191
nature that may be made or incurred and shall pay salvage and special charges 192
incurred in respect of the cargo. If a salving vessel is owned or operated by the 193
Owners, salvage shall be paid for as fully as if the said salving vessel or vessels 194
belonged to strangers. Such deposit as the Owners, or their agents, may deem 195
sufficient to cover the estimated contribution of the goods and any salvage and 196
special charges thereon shall, if required, be made by the cargo, shippers, 197
consignees or owners of the goods to the Owners before delivery.". 198

**13. Taxes and Dues Clause** 199
(a) *On Vessel* - The Owners shall pay all dues, charges and taxes customarily 200
levied on the Vessel, howsoever the amount thereof may be assessed. 201
(b) *On cargo* - The Charterers shall pay all dues, charges, duties and taxes 202
customarily levied on the cargo, howsoever the amount thereof may be 203
assessed. 204
(c) *On freight* - Unless otherwise agreed in Box 23, taxes levied on the freight 205
shall be for the Charterers' Owners' account. 206

**14. Agency** 207
In every case the Owners shall appoint their own Agents nominated by 208
Charterers both at the port of
loading and port of discharge. 209

**15. Brokerage** 210
A brokerage commission at the rate stated in Box 24 on the freight, dead-freight 211
and demurrage earned is due to party mentioned in Box 24. 212
In case of non-execution 1/3 of the brokerage on the estimated amount of 213
freight to be paid by the party responsible for such non-execution to the 214

Brokers as indemnity for the latter's expenses and work. In case of more 215
voyages the amount of indemnity to be agreed. 216

**16. General Strike Clause** 217
(a) If there is a strike or lock-out affecting or preventing the actual loading of the 218
cargo, or any part of it, when the Vessel is ready to proceed from her last port or 219
at any time during the voyage to the port or ports of loading or after her arrival 220
there, the Master or the Owners may ask the Charterers to declare, that they 221
agree to reckon the laydays as if there were no strike or lock-out. Unless the 222
Charterers have given such declaration in writing (by telegram, if necessary) 223
within 24 hours, the Owners shall have the option of cancelling this Charter 224
Party. If part cargo has already been loaded, the Owners must proceed with 225
same, (freight payable on loaded quantity only) having liberty to complete with 226
other cargo on the way for their own account. 227
(b) If there is a strike or lock-out affecting or preventing the actual discharging 228
of the cargo on or after the Vessel's arrival at or off port of discharge and same 229
has not been settled within 48 hours, the Charterers shall have the option of 230
keeping the Vessel waiting until such strike or lock-out is at an end against 231
paying half demurrage after expiration of the time provided for discharging 232
until the strike or lock-out terminates and thereafter full demurrage shall be 233
payable until the completion of discharging, or if ordering the Vessel to a safe 234
port where she can safely discharge without risk of being detained by strike or 235
lock-out. Such orders to be given within 48 hours after the Master or the 236
Owners have given notice to the Charterers of the strike or lock-out affecting 237
the discharge. On delivery of the cargo at such port, all conditions of this 238
Charter Party and of the Bill of Lading shall apply and the Vessel shall receive 239
the same freight as if she had discharged at the original port of destination, 240
except that if the distance of the substituted port exceeds 100 nautical miles, 241
the freight on the cargo delivered at the substituted port to be increased in 242
proportion. 243
(c) Except for the obligations described above, neither the Charterers nor the 244
Owners shall be responsible for the consequences of any strikes or lock-outs 245
preventing or affecting the actual loading or discharging of the cargo. 246

**17. War Risk ("Voywar 1993") VOYWAR 1950 TO APPLY** 247
(1) For the purpose of this Clause, the words: 248
(a) The "Owners" shall include the shipowners, bareboat charterers, 249
disponent owners, managers or other operators who are charged with the 250
management of the Vessel, and the Master; and 251
(b) "War Risks" shall include any war (whether actual or threatened), act of 252
war, civil war, hostilities, revolution, rebellion, civil commotion, warlike 253
operations, the laying of mines (whether actual or reported), acts of piracy, 254
acts of terrorists, acts of hostility or malicious damage, blockades 255
(whether imposed against all Vessels or imposed selectively against 256
Vessel of certain flags or ownership, or against certain cargoes or crews 257
or otherwise howsoever), by any person, body, terrorist or political group 258
or the Government of any state whatsoever, which, in the reasonable 259
judgement of the Master and/ or the Owners, may be dangerous or are 260
likely to be or to become dangerous to the Vessel, her cargo, crew or other 261
persons on board the Vessel. 262
(2) If at any time before the Vessel commences loading, it appears that, in the 263
reasonable judgement of the Master and/ or the Owners, performance of 264
the Contract of Carriage, or any part of it, may expose, or is likely to expose, 265
the Vessel, her cargo, crew or other persons on board the Vessel to War 266
Risks, the Owners may give notice to the Charterers cancelling this 267
Contract of Carriage, or may refuse to perform such part of it as may 268
expose, or may be likely to expose, the Vessel, her cargo, crew or other 269
persons on board the Vessel to War Risks: provided always that if this 270
Contract of Carriage provides that loading or discharging is to take place 271
within a range of ports, and at the port or ports nominated by the Charterers 272
the Vessel, her cargo, crew or other persons on board the Vessel may be 273
exposed, or may be likely to expose, to War Risks, the Owners shall 274
first require the Charterers to nominate any other safe port which lies 275
within the range for loading or discharging, and may only cancel this 276
Contract of Carriage if the Charterers shall not have nominated such safe 277
port or ports within 48 hours of receipt of notice of such requirement. 278
(3) The Owners shall not be required to continue to load cargo for any voyage, 279
or to sign Bills of Lading for any port or place, or to proceed or continue on 280
any voyage, or on any part thereof, or to proceed through any canal or 281
waterway, or to proceed to or remain at any port or place whatsoever, 282
where it appears, either after the loading of the cargo commences, or at 283
any stage of the voyage thereafter before the discharge of the cargo is 284
completed, that, in the reasonable judgement of the Master and/ or the 285
Owners, the Vessel, her cargo (or any part thereof), crew or other persons 286
on board the Vessel (or any one or more of them) may be, or are likely to be, 287
exposed to War Risks. If it should so appear, the Owners may by notice 288
request the Charterers to nominate a safe port for the discharge of the 289
cargo or any part thereof, and if within 48 hours of the receipt of such 290

PART II
"Gencon" Charter ( As Revised 1922,1976 and 1994)

notice, the Charterers shall not have nominated such a port, the Owners 291
may discharge the cargo at any safe port of their choice (including the port 292
of loading) in complete fulfilment of the Contract of Carriage. The Owners 293
shall be entitled to recover from the Charterers the extra expenses of such 294
discharge and, if the discharge takes place at any port other than the 295
loading port, to receive the full freight as though the cargo had been 296
carried to the discharging port and if the extra distance exceeds 100 miles, 297
to additional freight which shall be the same percentage of the freight 298
contracted for as the percentage which the extra distance represents to 299
the distance of the normal and customary route, the Owners having a lien 300
on the cargo for such expenses and freight. 301
(4) If at any stage of the voyage after the loading of the cargo commences , it 302
suggest that, in the reasonable judgement of the Master and/ or the 303
Owners, the Vessel, her cargo, crew or other persons on board the Vessel 304
may be, or are likely to be, exposed to War Risks on any part of the route 305
(including any canal or waterway) which is normally and customarily used 306
in a voyage of the nature contracted for, and there is another longer route 307
to the discharging port, the Owners shall give notice to the Charterers that 308
this route will be taken. In this event the Owners shall be entitled if the total 309
extra distance exceeds 100 miles , to additional freight which shall be the 310
same percentage of the freight contracted for as the percentage which the 311
extra distance represents to the distance of the normal and customary 312
route. 313
(5) The Vessel shall have liberty:- 314
(a) to comply with all orders, directions, recommendations or advice as to 315
departure, arrival, routes, sailing in convoy, ports of call, stoppages, 316
destinations, discharge of cargo, delivery or in any way whatsoever which 317
are given by the Government of the Nation under whose flag the Vessel 318
sails, or other Government to whose laws the Owners are subject, or any 319
other Government which so requires, or any body or group acting with the 320
power to compel compliance with their orders or directions; 321
(b) to comply with the orders , directions or recommendations of any war 322
risks underwriters who have the authority to give the same under the terms 323
of the war risks insurance; 324
(c) to comply with the terms of any resolution of the Security Council of the 325
United Nations , any directives of the European Community , the effective 326
orders of any other Supranational body which has the right to issue and 327
give the same, and with national laws aimed at enforcing the same to which 328
the Owners are subject, and to obey the orders and directions of those who 329
are charged with their enforcement. 330
(d) to discharge at any other port any cargo or part thereof which may 331
render the Vessel liable to confiscation as a contraband carrier. 332
(e) to call at any other port to change the crew or any part thereof or other 333
persons on board the Vessel when there is reason to believe that they may 334
be subject to internment, imprisonment or other sanctions; 335
(f) where cargo has not been loaded or has been discharged by the 336
Owners under any provisions of this Clause, to load other cargo for the 337
Owners' own benefit and carry it to any other port or ports whatsoever, 338
whether backwards or forwards or in a contrary direction to the ordinary or 339
customary route. 340
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this 341
Clause anything is done or not done, such shall not be deemed to be a 342
deviation, but shall be considered as due fulfilment of the Contract of 343
Carriage. 344

18. General Ice Clause 345
Port of loading 346
(a) In the event of the loading port being inaccessible by reason of ice when the 347
Vessel is ready to proceed from her last port or at any time during the voyage or 348
on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the 349
Master for fear of being frozen in is at liberty to leave without cargo, and this 350
Charter Party shall be null and void. 351
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it 352
advisable to leave, he has liberty to do so with what cargo he has on board and 353
to proceed to any other port or ports with option of completing cargo for the 354

Owners' benefit for any port or ports including port of discharge. Any part 355
cargo thus loaded under this Charter Party to be forwarded to destination at the 356
Vessel's expense but against payment of freight , provided that no extra 357
expenses be thereby caused to the Charterers, freight being paid on quantity 358
delivered (in proportion if lumpsum) , all other conditions as per this Charter 359
Party. 360
(c) In case of more than one loading port, and if one or more of the ports are 361
closed by ice, the Master or the Owners to be at liberty either to load the part 362
cargo at the open port and fill up elsewhere for their own account as under 363
section (b) or to declare the Charter Party null and void unless the Charterers 364
agree to load full cargo at the open port. 365

Port of discharge 366
(a) Should ice prevent the Vessel from reaching port of discharge the 367
Charterers shall have the option of keeping the Vessel waiting until the re- 368
opening of navigation and paying demurrage or of ordering the Vessel to a safe 369
and immediately accesible port where she can safely discharge without risk of 370
detention by ice. Such orders to be given within 48 hours the Master or the 371
Owners have given notice to the Charterers of the impossibility of reaching port 372
of destination. 373
(b) If during discharging the Master for fear of the Vessel being frozen in deems 374
it advisable to leave, he has liberty to do so with what cargo he has on board and 375
to proceed to the nearest accessible port where she can safely discharge. 376
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall 377
apply and the Vessel shall receive the same freight as if she had discharged at 378
the original port of destination, except that if the distance of the substituted port 379
exceeds 100 nautical miles, the freight on the cargo delivered at the substituted 380
port to be increased in proportion. 381

19. Law and Arbitration 382
(a) This Charter Party shall be governed by and construed in accordance with 383
English Law and any dispute arising out of this Charter Party shall be referred to 384
arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or 385
any statutory modification or re-enactment thereof for the time being in force. 386
Unless the parties agree upon a sole arbitrator, one arbitrator shall be 387
appointed by each party and the arbitrators so appointed shall appoint a third 388
arbitrator, the decision of the three-man tribunal thus constituted or any two of 389
them, shall be final. On the receipt by one party of the nomination in writing of 390
the other party's arbitrator, that party shall appoint their arbitrator within 391
Fourteen days, failing which the decision of the single arbitrator appointed shall 392
be final. 393
For disputes where the total amount claimed by either party does not exceed 394
the amount stated in Box 25** the arbitration shall be conducted in accordance 395
with the Small Claims Procedure of the London Maritime Arbitrators 396
Association. 397
(b) This Charter Party shall be governed by and construed in accordance with 398
Title 9 of the United States Code and Maritime Law of the United States and 399
should any dispute arise out of this Charter Party, the matter in dispute shall be 400
referred to three persons at New York, one to be appointed by each of the 401
parties hereto, and the third by the two so chosen; their decision or that of any 402
two of them shall be final, and for purpose of enforcing any award, this 403
agreement may be made a rule of the Court. The proceedings shall be 404
conducted in accordance with the rules of the Society of Maritime Arbitrators, 405
Inc. 406
For disputes where the total amount claimed by either party does not exceed 407
the amount stated in Box 25** the arbitration shall be conducted in accordance 408
with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, 409
Inc. 410
(c) Any dispute arising out of this Charter Party shall be referred to arbitration at 411
the place indicated in Box 25 , subject to the procedures applicable there. The 412
laws of the place indicated in Box 25 shall govern this Charter Party. 413
(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply. 414
(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25. 415
** Where no figure is supplied in Box 25 in Part I, this provision only shall be void but 416
the other provisions of this Clause shall have full force and remain in effect. 417



## MV TEOS   ADDITIONAL RIDER CLAUSES TO THE CHARTER PARTY DATED 23 JUNE 2009

**CLAUSE 18**
Cargo to be loaded ,discharged by the Charterers free of expense to the vessel. Owners to pay ordinary port expenses at load port. Free actual proforma disbusement account, at discharge port, to be paid by Charterers/ Receivers.

**CLAUSE 19**
The loading rate 2500 metric tons per weather working day of 24 concequive hours saturdays, sundays holidays excluded even if used, discharging rate 1200 mts weather working days of 24 consecutive hours Saturday, Sundays Holidays excluded even if used, both basis min 3 hatches always available. If longer detained, Charteres to pay demmurage at the rate stipulated in box 18.
Laytime to be non – reversible.

**CLAUSE 20**
At loading and discharging ports, time from Friday 17.00 hours or 17.00 hours on days preceding a holiday, until 08.00 hours on Monday or 08.00 hours on the following working day, not to count even if used.

**CLAUSE 21**
Notice of Readiness may not be tendered prior to commencement or after cancelling date.

At loading ports, the NOR can be tendered WWWW basis Saturdays Sundays Holidays excluded between 08 am and 5 pm. At discharging ports, the NOR must also be tendered during local office hours, from Monday to Friday , between 08 am and 5 pm.

At loadport and discharging ports, time to commence to count at 14.00 hours if notice of readiness is given before noon, and at 08.00 hours next working day if notice of readiness is given afternoon previous day. Notice of Readiness to be tendered whether in berth or not, whether in port or not, whether in free pratique granted or not and whether custom cleared or not .Time used before commencement of lay time not to count. If vessel fails to clear from the custom or grant free pratique due to reasons attributed to the vessel, time not to count as laytime from rejection until vessel passed.

NOR can be tendered at both ports by email, cable, telex-fax, vhf , radio.
Time used in shifting on to berth /anchorage from waiting place , not to count.

Shifting, if any, to be for receivers account .
Time used for canal or dock pasages to be for ownrs account.

When the wether is bad or threathening the master will close the hatchcovers and time will not count as laytime.

**CLAUSE 22**
Charterers agent at load port:
Sudoservice Shipping Consultancy and Trading Ltd.
Shipping Agency License Nr. 0214
Acibadem Cad.  Ibrahimaga  Is Bankasi  Konutlari
A-2 Blok  D. 3    Kadikoy - Istanbul / TURKEY
Phone            : +90 216 327 59 03 - 04
Fax              : +90 216 327 65 93
E-mail           : sudoservice@sudoserviceshipping.net / sudoservis@ttmail.com
Pls visit our    : www.sudoserviceshipping.net

Charterers agent at disch port:
To be advised before vessel's arrival at Nigeria.

**CLAUSE 23**
Owners to give Notice of Readiness on fixing to Charterers and to keep the Charterers fully advised of vessel's eta load port and discharge port giving 3/2/1 days arrival notices.



## MV TEOS  ADDITIONAL RIDER CLAUSES TO THE CHARTER PARTY DATED 23 JUNE 2009

Notices to be given to chartering@sudoserviceshipping.net at load port.

**CLAUSE 24**
Owners/ Master herewith to authorise charteres agent Sudoserviceshipping to issue and sign " clean on Board ' and ' Freight prepaid " B/L on master's/ Owner's behalf in strict confirmity with mates receipts and draft copy to be sent to ownrs for final approval before signing. In case freight prepaid, Owners will release these pre-paid bills of lading, immediately after; 1) Owners or owners bank receive from the remitting bank a telex/fax, or 2) Charterers/ Charterers brokers to provide a copy of the remitting bank's swift advice confirming payment has been irrevocably remitted to owners bank. Bills of lading marked freight prepaid and clean on board. Bills of lading signed released by the agent by writing Sudoservice shipping as agent on behalf of ownrs or on behalf of the master. Bills of lading will be prepaid in shippers office in Istanbul Chrtr's will fax the bills of Lading to the ownrs for thier confirmation. Bills of lading can be released only after receiving ownrs written confirmation

**CLAUSE 25**
Master to sign statement of facts concerning time used in loading and discharging submitted to him by agents, making his reservation if he beleives this statement to be incorrect

**CLAUSE 26**
All taxes/dues/charges on cargo at loading/discharging ports to be for Shippers/Receivers/Charterers account.
Any taxes/dues on vessel/flag/freight, including dock/fairway dues to be for Owners' account at both ends. This also includes 'port' (quay) dues or 'conservancy charges on ship's or any other charges which are based on the metric ton of cargo loaded, but which are for owners account, only at load port.
N.M.A. tax at Nigeria always to be for Charterers/Receiver's account.

**CLAUSE 27**
Any extra insurance on cargo, if any, due to vessel's age to be for Charterer's account.
War risk premium, if any, to be for Owners account

**CLAUSE 28**
This contract is governed by English law. Dispute arising under this charter  to be referred to arbitration in London . One arbitrator to be nominated by the owners and the other by the charterers and in case the arbitrators shall not agree then to the decision of an umpire to be appointed by them. The award of the arbitrators of the umpire to be final and binding upon both parties.

**CLAUSE 29**
Stevedores overtime to be for the account of party ordering same. If overtime ordered by Port Authority same to be for charterers account. However officers and crew overtime always to be for owners account.

**CLAUSE 30**
The stevedores although appointed by charterers shippers or receivers or their agents to be under the direction and control of the master. Charterers,shippers,receivers shall not be responsible for the acts and defaults of stevedores at loading and discharging ports. All claims for damages allegedly caused by stevedores to be settled directly between owners and stevedores at loading and discharging ports. Master to notify stevedores damage,if any, in writing within 24 hours after occurance;otherwise ,stevedores not to be held liable. In case owners can not settle stevedores damages, Charterers will assist owners in every possible way.

**CLAUSE 31**
Vessel to tender clear of Sweat battens and obstacles that might be hindering the loading and discharging . Tank tops, tunnels , exposed cables and pipes to be entirely and properly protected by the vessel against the hazards normally connected with scrap cargo.Broken or split boards, cargo battens dunnage or loose protection on tank tops not to be considered as proper protection

**CLAUSE 32**
Vessel to furnish a certified calibration scale for all tanks including fore and after peak and double bottom tanks and deep tanks. Plimsol marks amidships and draft marks on port and starboard side. Bow and stern to clearly cut and



## MV TEOS · ADDITIONAL RIDER CLAUSES TO THE CHARTER PARTY DATED 23 JUNE 2009

marked on shell plating. Vessel to furnish capacity plan. Displacement scale and same to be certificed by Master as to correctness at time of loading.

**CLAUSE 33**
Understood owners to comply with any law or regulation concerning oil pollution and owners financial responsibility therefore.

**CLAUSE 34**
Deleted

**CLAUSE 35**
Transhipment is not allowed.

**CLAUSE 36**
Owners/Master to be responsible for the number of big bags loaded on board the vessel

**CLAUSE 37**
The act of God,restraint of princess and rulers,the country's enemies, fire, floods droughts and all every dangers and stoppages at the mills and accidents of sees and rivers and navigation riot on the rail roads which may prevent the loading and discharging mutally excepted but same to be legally proven that will affect this shipment directly ownr's right as per Voywar cls to apply in the above cases as well .

Bimco holiday calender to apply.

**CLAUSE 38**
VOYWAR 1950,New Jason Clause,new both to blame collission, P & I bunkering clause as attached here to are fully incorporated in this charter party.

**CLAUSE 39**
DELETED

**CLAUSE 40 – Vessel's description**
Mv Teos
10082 dwt on 7,82 mtr – mpp/flush twd (can trade as SID)
1979 blt -st vincent flag – Insb class
imo number 7800306
loa/b/d 137,31 x 19,50 x 10,50 mtr
grt / nrt 8205 / 4220
grain/bale 532984 cuft/ 489192 cuft
no 1 g/b ( 79885 / 72121) cuft
no 2 g/b (232220 / 213596) cuft
no 3 g/b (220879 / 203475) cuft
3ho/3ha – single pull type mc gregor hatchcovers
hatches LXB no1 12.80x6.0 m / no 2+no3 25.60x10,50 m
hold  LXBXH no1 18.4x4.0/14.0(fwd/aft)x4.03 m
holdsno2+no3 LXBXH  35.2x19.0x5.4 m
twins LXBXH no1 18.4x 9.9/16.0 (fwd/aft)x5.5 m
twins no 2+no 3 LxBxH 35.2x18.55x5.50 m
permissible loads holds  9 mts/sqm
twindecks 3.40 mts/sqm – hatchcovers 2,50 mts/sqm
geared 2 cranes 10 tons serving hatch no 1+forepart no 2
2 derricks 10 tons hatch no 2
1 stulcken derrick 60 tons serving hatches no 2+3
2 derricks 10 tons serving hatch no 3
1 velle derrick 22 tons hatch no 3

## MV TEOS – ADDITIONAL RIDER CLAUSES TO THE CHARTER PARTY DATED 23 JUNE 2009

app b + co2 + bow thruster fitted
all about and wog

**CLAUSE 41**
100 percent of freight, on Bill(s) of Lading quantity, to be payable less commisions only, within 3 banking days, to Owners nominated bank account, after signing/ releasing the 'Clean on Board' Bill(s) of Lading marked 'Freight payable as per Charter Party' or in Charterers' option 'Freight Prepaid'. Full freight deemed earned on signing Bill(s) of Lading discountless and nonreturnable vessel and/or cargo lost or not lost.
All cargo will be loaded in clean condition and Master has the right to reject damaged cargo.
It is owner's option to perform preloading condition survey in order to ascertain the condition of the cargo. If preloading survey to be carried then expenses to be borne by the ownrs. Minor descripencies remarks such as '' borken big bags at the ends tiny oil spots as ascertained by the pandi club representative or by the master of the vsl shall be inserted in the mate's receipts however clean on board Bills of lading to be issued against chrtr's company LOI in owners pandi wording.

Undisputed and agreed demmurage, if any, to be paid in 7 banking days after owners have presented to charteres their final freight account together with the supporting documents

Freight will be paid in USD currency Charterers will be responsible from the demmurage at load /discharge ports and will be paid with in 7 days after ownrs pesentaion of SOF, NOR, time sheet by fax.

**CLAUSE 42**
Charter party terms shall always superseed Bills of Lading terms whenever contradictory.

**CLAUSE 43**
Charteres /shippers / receivers have the liberty to work during expected periods and master to allow to be done

**CLAUSE 44**
Deleted

**CLAUSE 45**
Opening and closing of hatches and rigging of gears shall always be done for Owners' account. By crew if permitted by local regulations.if not permitted same to be for chrtr's account and time.

Owners guarantee that vessel's hatch covers are to be water tight all through this voyage.If any hatch covers found defective same should be rectified at owners time and expense to Charterers satisfaction and independent surveyors satisfaction. Charterers have the right to carry out hose test on all hatches prior to loading If the vessel fails from the hose test  twice then the charterers will have the option to cancell the fixture

**CLAUSE 46**
All cargo to be loaded in vessel's holds as customary and no cargo to be loaded in deeptanks or unusual places. Should any cargo to be loaded in deeptanks or in places not easily accessible to Shippers/Receivers. Any extra cost including loss of time for loading and discharging to be borne by the Owners.

**CLAUSE 47**
Vessel shall be highest classed and fully covered with P & I Club during the currency of this Charter Party.

All vessels certificates will be valid/through when the vessel arrived to load /discharge port. Whenever required the owners will be responsible to fax any certificate, any time , to the charteres during the voyage.

**CLAUSE 48**
Partial cargo not allowed.



**MV TEOS   ADDITIONAL RIDER CLAUSES TO THE CHARTER PARTY DATED 23 JUNE 2009**

**CLAUSE 49**
No drydocking or repairs during the currency of this Charter party excluding emergency repairs affecting seaworthiness of the vessel.

**CLAUSE 50**
In case lack of original Bills of Lading be the time vessel arrives discharge port then Owners agree to discharge the cargo against Charterers company Letter of indemnity in owners P and I  wording

**CLAUSE 51**
Vessel is geared with derricks  2 x 10 mts swl, 1 x 22 mts swl, 1 x 60 mts swl ; the cargo shall be discharged by vessel's own derricks, at discharge port only, free of charge to the shippers and Receivers.

Owners guarantee vessel's derricks are in good working condition or in case of vessel's crane breakdown, such period is considered off hire pro rata to the nuber of effected hatches (but in case non workable crane serving holds not containing cgo, time to count)  and Owners to be responsible for the direct expenses incurred and delay occurred, including stevedores stand by , which to be limited to one shift. In case of a break down of more than 24 hours shipprs / receivers  have the option to employ shore cranes, expenses of which to be ownr's account. However, time to count full employment of shore gear always to be subject to Owners confirmation which not to be unreasonably withheld.

**CLAUSE 52**
Vessel is ISM covered, Bimco ISPS clause for voyage charter party to apply.

**CLAUSE 53 - QUESTIONNAIRE**

**1) VESSELS CERTIFICATES**
ALL RELEVANT CERTIFICATES ARE TO BE EMAIL/FAXED TO CHARTS PRIOR SUBJECTS TO BE LIFTED AND SAME TO BE VALID FOR THE DURATION OF THE VOYAGE,IN ORDER THAT CHARTERERS MAY SECURE THEIR INSURANCE UNDERWRITERS APPROVAL.

EXPIRY AND CERTIFICATE NUMBER:-

A.SAFETY CERTIFICATE (EQUIPMENT AND CONSTRUCTION) B.CLASSIFICATION CERTIFICATE C.HULL AND MACHINERY CERTIFICATE D.INTERNATIONAL LOAD LINE CERTIFICATE E.DERATIZATION CERTIFICATE F.ISSC (INTERNATIONAL SHIP SECURITY CERTIFICATE) G.PROTECTION AND INDEMNITY H.DOCUMENT OF COMPLIANCE (DOC) I.SAFETY MANAGMENT CERTIFICATE (SMC)

**2) DIMS OF LOWERHOLDS/TANK TOPS LENGTH X BREADTH FORE AND AFT X HEIGHT:** AS PER DESCRIBED ON VESSEL DETAILS.

**4) TANKTOP/TWD/3RD DECK STRENGTHS/MAX PERMISSIBLE LOADS :**AS PER DESCRIBED ON VESSEL DETAILS.

**5) CLASS: OWNERS CONFIRM VESSEL TO BE HIGHEST IACS CLASS :** VESSEL IS INSB GREECE WHICH IS NOT IACS MEMBER WITHOUT OUTSTANDING CLASS RECOMENDATIONS OR CONDITIONS IMPOSED THAT MAY EFFECT THE EXECUTION OF THIS VOYAGE.

**6) P+I:** OWNERS GUARANTEE THAT THE PERFORMING VESSEL WILL BE FULLY INSURED AND PANDI COVERED (WITH ALL CURRENT PREMIUMS PAID) FOR ALL RISKS (INCLUDING FOR CARGO CLAIMS) AND IS NOT SUBJECT TO ANY KNOWN BREACH OF CLUB RULES AND WILL REMAIN COVERED FOR THE DURATION OF THIS VOYAGE VIA AN INTERNATIONALLY RECOGNISED

**INSURANCE/PANDI CLUB NAMELY :** BRITISH MARINE LUXEMBURG

**7) GEAR :** VSL IS GEARED WITH DERICKS:

## MV TEOS  ADDITIONAL RIDER CLAUSES TO THE CHARTER PARTY DATED 23 JUNE 2009

- 2 X 10 MTS SWL
- 1 X 22 MTS SWL
- 1 X 60 MTS SWL

**8) SUITABILITY HOLDS/HATCHES:** OWNERS TO CONFIRM VSL HAS

**a BOX SHAPED HOLDS WITHOUT NARROWING:** NO AS PER DESCRIBED

**b DOUBLESKINNED HOLDS THROUGHOUT WITHOUT FRAMES :** NO AS PER DESCRIBED ON VESSEL DETAILS

**c VERTICAL SIDES IE TANKTOP MEETS HOLD SIDE AT 90 DEGREE ANGLE :** AS PER DESCRIBED ON VESSEL DETAILS

**d THE VSL HAS LOWER HOPPERS OR SHELVES/BENCHES/LEDGES :** AS PER DESCRIBED ON VESSEL DETAILS

**e STEELCEILING/FLOOR?:** WOODEN FLOOR

'IN ANY CASE OWS CONFIRM THAT THE VSLS HOLDS HAVE NO BEAMS, RIBS, STEPS, COLUMNS, LEDGES, SHELVES OR CENTERLINE BULKHEAD AND ARE GUARANTEED SUITABLE FOR LOADING STOWING CARRIAGE AND DISCHARGE OF CHTRS DESCRIBED CGO. " WITH WOODEN FLOO"

**9) H+M: VESSELS HULL+MACHINERY INSURED WITH VALUE USD  3.5 MILLION.**

**10) OWNERS CONFIRM VESSELS LAST 3 VOYAGES WERE ALL HARMLESS NON DANGEROUS MATERIALS/GENS .**

**11)SERVICE SPEED AND CONSUMPTION FIGURES:** ABT 10 KNOTS

**12) OWNERS CONFIRM THE PERFORMING VESSEL HAS NOT DECLARED GENERAL AVERAGE OR BEEN INVOLVED IN AN ACCIDENT/STRANDING/BREAKDOWN INCLUDING GROUNDING, FIRE, CARGO DAMAGE WITHIN THE LAST 2 YEARS**

**13) PSC: LAST PORT STATE CONTROL INSPECTION OF THE VESSEL WAS WHICH ORGANISATION/ COUNTRY/ PORT/ DATE :** LAST SEPTEMBER AT LISBON

**14) VESSEL'S CONTACT DETAILS: MOBILE TEL NO:/TLX NO:/FAX NO:** VIA TROY SHIPPING 0090 216 369 4646/MIC CPT ENGIN LAFCI

**15) 24 HOUR CONTACT DETAILS FOR OWNERS/MANAGERS AND PERSON IN CHARGE :** CPT ENGIN AFCI 0090 216 369 4646

**16) LAST SPECIAL SURVEY AND DRYDOCK :** OCTOBER 2008

**NEXT SS AND DRYDOCK WILL BE :** OCTOBER 2013/OCTOBER

**17) THE VESSEL IS UNDER CONTINUOUS SURVEY FOR HULL, MACHINERY, GEAR**

**18) HAS THE VESSEL OR VESSEL UNDER THE SAME OWNERSHIP OR MANAGEMENT BEEN ARRESTED DURING THE PAST TWO YEARS :**NO

**19) HAS ANY BANK A MORTGAGE ON VESSEL :**NO

## MV TEOS   ADDITIONAL RIDER CLAUSES TO THE CHARTER PARTY DATED 23 JUNE 2009

**20) THE VESSEL HAS BEEN UNDER THE SAME OWNERSHIP AS INDICATED IN THIS CP FOR THE PAST YEARS :** YES

**21) PLEASE ADVISE OWNERS OTHER VESSELS UNDER SAME OWNERS/MANAGERS:** NO

**22)** OWNERS CONFIRM THAT THE VESSEL HAS NOT BEEN INVOLVED IN ANY MARITIME INCIDENT WITHIN THE LAST 5 YEARS INCLUDING BUT NOT LIMITED TO COLLISION/ STRANDING/ GROUNDING/ CAPSIZING/ MACHINERY BREAKDOWN LEADING TO TUG OR OTHER VESSEL ASSISTANCE.

**23)** VESSEL WILL NOT BE SCRAPPED AT END OF THIS VOYAGE.

**24) FLUSH DECKS -** OWNERS CONFIRM THAT BOTH THE MAIN HOLD TANK TOPS AND THE TWEEN DECKS (IF APPLICABLE) ARE FLUSH/WITHOUT PROJECTIONS/OBSTRUCTIONS AND ARE GUARANTEED SUITABLE FOR THE USE OF FORK LIFTS.

**25)** OWNERS CONFIRM THAT HATCHES ARE WATERTIGHT AND THAT THE SEALS/RUBBER GASKETS ARE IN GOOD CONDITION.

**26)** FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO SOLAS (THE ISPS CODE) AND THEREAFTER DURING THE CURRENCY OF THIS CP THE OWNERS SHALL PROCURE THAT THE VESSEL AND "THE COMPANY" (AS DEFINED IN THE ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE.

**27)** OWNERS WARRANT THAT THE PERFORMING VESSEL/CARRIER/OWNER/DISPONENT OWNERS/ MANAGERS WILL ALWAYS BE IN CONFORMITY WITH APPLICABLE LAWS RELATING TO THE LOAD/ DISCHARGING COUNTRIES AND ANY WATERS/COUNTRIES VESSEL TRANSITS THROUGH TO PERFORM THIS VOYAGE INCLUDING ALL UNITED NATIONS/ I.M.O./ COAST GUARD/ CUSTOMS/ ISPS/ MTSA OR ANY OTHER MARITIME ORGANISATIONS PROCLAMATIONS/REGULATIONS.

OWNERS TO BE FULLY RESPONSIBLE FOR ALL COSTS/CONSEQUENCES IF IN VIOLATION OF THIS WARRANTY.

**28)BIMCO ISM CLAUSE:-**
FROM THE DATE OF THE COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (ISM) CODE IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE OWNER SHALL PROCURE THAT BOTH THE VESSEL AND 'THE COMPANY' (AS DEFINED BY THE ISM CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE.UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENT OF COMPLIANCE (DOC) AND SAFETY MANAGEMENT CERTIFICATE (SMC) TO THE CHARTERERS.

EXCEPT AS INDICATED IN THIS CHARTERPARTY, LOSS, DAMAGE, EXPENSE OR DELAY CAUSED BY THE FAILURE ON THE PART OF THE OWNERS OF 'THE COMPANY' TO COMPLY WITH THE ISM CODE SHALL BE FOR OWNERS ACCOUNT.

**OWNERS**                                                      **CHARTERERS**

TRANSCOM SHIPPING N.V.
CURAÇAO

# EXHIBIT 2

# TRANSCOM SHIPPING N.V.



Van Engelenweg 23 P.O. Box 3335
Curaçao Netherlands Antilles

2/7/2009

# INVOICE
---------------------
08/2009

## ACCT. K.Y.E. INTERNATIONAL GENERAL TRADING L.L.C. - DUBAI

M/V TEOS
ANTALYA / ONNE PORT - NIGERIA
9,500,768 MTS CEMENT


| | | |
|---|---|---|
| 9.500,768 MTS X 41 USD | USD | 389,531,48 .- |
| LESS 2,5 PCT. COMM | USD | 9,738,28 .- |

---

| **GRAND TOTAL** | **USD** | **379,793,20.-** |
|---|---|---|

**(ONLYTHREEHUNDEREDSEVENTYNINETHOUSANDSEVENHUNDE REDNINETYTHREEDOLLARSTWENTYCENTS)**

PLEASE REMIT TO :
BANKERS        :   DEMIRHALK BANK  NEDERLAND N.V.
                        ROTTERDAM / HOLLAND
ACC NO         :   074 44 327 58
IBAN            :   NL36DHBN0744432758
SWIFT CODE  :   DHBNNL2R
CORR  BANK  :   AMERICAN EXPRESS BANK  NEWYORK-NEWYORK

## IN FAVOUR OF : TRANSCOM SHIPPING N.V.

TRANSCOM SHIPPING N.V.
CURAÇAO

# TRANSCOM SHIPPING N.V.



Van Engelenweg 23 P.O. Box 3335
Curaçao Netherlands Antilles

31/8/2009

# INVOICE
-----------------------
10/2009

## ACCT. K.Y.E. INTERNATIONAL GENERAL TRADING L.L.C. - DUBAI

M/V TEOS
ANTALYA / ONNE PORT - NIGERIA
9,500,768 MTS CEMENT

| | | |
|---|---|---|
| DEMURRAGE | USD | 139,354,41 .- |
| (23D05H25M) | | |

---

| | | |
|---|---|---|
| **GRAND TOTAL** | **USD** | **139,354,41 .-** |

**(ONLYONEHUNDEREDTHIRTYNINETHOUSANDTHREEHUNDERE DFIFTYFOURDOLLARSFOURTYONECENTS)**

PLEASE REMIT TO :
BANKERS      :    DEMIRHALK BANK  NEDERLAND N.V.
                        ROTTERDAM / HOLLAND
ACC NO        :    074 44 327 58
IBAN           :    NL36DHBN0744432758
SWIFT CODE :    DHBNNL2R
CORR BANK  :    AMERICAN EXPRESS BANK NEWYORK-NEWYORK
**IN FAVOUR OF  :  TRANSCOM SHIPPING N.V.**



TRANSCOM SHIPPING N.V.
CURAÇAO

## LAYTIME CALCULATION FOR ONNE PORT

| | | |
|---|---|---|
| CARGO QTTY | : | 9,500,25 MTS  BAGGED CEMENTS |
| DISCHARGING RATE | : | 1200  MTS PWWD SHEX EIU   1700 FRIDAY  / MONDAY  08:00 HRS |
| DEM | : | USD 6000 ,- PDPRTA |
| TIME COUNTING | : | 8AM/2PM – WIPON/WIFPON/WICCON/WIBON |
| NOR TENDERED | : | 26.07.2008  0700 HOURS |
| TIME ALLOWED | : | 07 DAYS 22  HOURS 00  MINS |

| DAY | TIME | D | H | M | REMARKS |
|---|---|---|---|---|---|
| 26.07.2009 | 07:00/24:00 | - | - | - | TIME NOT TO COUNT |
| 27.07.2009 | 00:00/14:00 | - | - | - | TIME NOT TO COUNT |
| 27.07.2009 | 14:00/24:00 | - | 10 | - | DESPATCH |
| 28.07.2009 | 00:00/24:00 | 1 | - | - | DESPATCH |
| 29.07.2009 | 00:00/24:00 | 1 | - | - | DESPATCH |
| 30.07.2009 | 00:00/24:00 | 1 | - | - | DESPATCH |
| 31.07.2009 | 00:00/17:00 | - | 17 | - | DESPATCH |
| 31.07.2009 | 17:00/24:00 | - | - | - | WEEKEND |
| 01.08.2009 | 00:00/24:00 | - | - | - | WEEKEND |
| 02.08.2009 | 00:00/24:00 | - | - | - | WEEKEND |
| 03.08.2009 | 00:00/08:00 | - | - | - | WEEKEND |
| 03.08.2009 | 08:00/24:00 | - | 16 | - | DESPATCH |
| 04.08.2009 | 00:00/24:00 | 1 | - | - | DESPATCH |
| 05.08.2009 | 00:00/24:00 | 1 | - | - | DESPATCH |
| 06.08.2009 | 00:00/03:00 | - | 03 | - | VESSEL IS ON DEMURRAGE |
| | | | | | |
| 06.08.2009 | 03:00/24:00 | - | 21 | - | DEMURRAGE |
| 07.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 08.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 09.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 10.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 11.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 12.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 13.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 14.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 15.08.2009 | 00:00/14:30 | - | 14 | 30 | DEMURRAGE |
| 15.08.2009 | 14:30/21:50 | - | 03 | 40 | DEMURRAGE 1/2 COUNT |
| 15.08.2009 | 21:50/24:00 | - | 02 | 10 | DEMURRAGE |
| 16.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 17.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 18.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 19.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 20.07.2009 | 00:00/09:00 | - | 09 | - | DEMURRAGE |
| 20.08.2009 | 09:00/11:45 | - | - | 55 | DEMURRAGE 1/3 COUNT |
| 20.08.2009 | 11:45/16:30 | - | 04 | 15 | DEMURRAGE |
| 20.08.2009 | 16:30/21:00 | - | 01 | 30 | DEMURRAGE 1/3  COUNT |
| 20.08.2009 | 21:00/24:00 | - | 03 | - | DEMURRAGE |
| 21.08.2009 | 00:00/15:55 | - | 15 | 55 | DEMURRAGE |
| 21.08.2009 | 15:55/17:00 | - | - | - | SHIFTING |
| 21.08.2009 | 17:00/24:00 | - | 07 | - | DEMURRAGE |
| 22.08.2009 | 00:00/07:00 | - | 07 | - | DEMURRAGE |
| 22.08.2009 | 07:00/11:45 | - | - | - | HATCHCOVERS DEFECT |
| 22.08.2009 | 11:45/24:00 | - | 12 | 15 | DEMURRAGE |
| 23.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 24.08.2009 | 00:00/16:40 | 1 | - | - | DEMURRAGE |
| 25.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 26.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 27.08.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 28.07.2009 | 00:00/24:00 | 1 | - | - | DEMURRAGE |
| 29.07.2009 | 00:00/23:15 | - | 23 | 15 | DEMURRAGE |

DEMURRAGE TIME                    23 DAYS 05 HOURS 25 MINS


**TOTAL : USD 139,354.41**


15.08.2009 :  1430-2150  ONLY ONE CRANE  WORKED  INSTEAD  OF 2  THEREFORE HALFT TIME TO
COUNT AS  03 HOURS 40 MINS

15.08.2009 :  AFTER 21.50 HOURS VESSEL CRANES  WERE READY TO SERVE  BUT STEVEDORES
PREFERED TO WORK WITH TWO GANGS

20.08.2009: 0900 TO 1145 HOURS    2 HOLDS WERE  ENGAGED FOR  OPENING TWEEN HATCHES
THEREFORE 1/3  TIME  USED AND COUNT  AS  55 MINUTES

20.08.2009 : 1630 TO 2100  2 HOLDS WERE  ENGAGED FOR  OPENING TWEEN HATCHES
THEREFORE 1/3  TIME  USED AND COUNT  AS  01 HOURS  30  MINUTES

 **SUPERMARITIME (NIGERIA) LTD.**

### STATEMENT OF FACTS **MV TEOS**

| | | |
|---|---|---|
| VSL ARRIVED F. W. BUOY | 26/07/09 | @ 0700 hrs. |
| NOTICE TENDERED | 26/07/09 | @ 0700 hrs. |
| NOTICE ACCEPTED AS PER CHARTER | | |
| PARTY AGREEMENT ONLY | " | " " |
| VSL LEFT F. W. BUOY | 14/08/09 | " 1600 " |
| VSL ANCHORED BONNYTOWN | " | " 1910 " |
| 1ST PILOT ON BOARD BONNY | 15/08/09 | " 0950 " |
| VSL BERTHED AT FLT HARD QUAY | 15/08/09 | " 1225 " |
| FREE PRATIQUE | 15/08/09 | " 1330 " |
| VSL COMMENCED DISCHARGE | 15/08/09 | " 1630 " |
| VSL COMPLETED DISCHARGE | 29/08/09 | "2315 " |
| VSL PICK PILOT TO SAIL | 30 / 08/09 | " " |
| VSL SAILED | 30 /08/09 | " " |
| VSL DROPPED OUTWARD PILOT | 30 /08/09 | " " |

| DAY | DATE | HAT. | IDLE-TIME | HRS | MINS | REMARKS |
|---|---|---|---|---|---|---|
| SUN | 26/7/09 | ALL | 0700 HRS. | - | - | VSL. ARRIVED F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| | | ALL | 0700-2400 | 17 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| MON | 27/7/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| TUE | 28/7/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| WED | 29/7/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| THU | 30/7/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| FRI | 31/7/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| SAT | 01/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| SUN | 02/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | RECEIVERS/BERTH. |
| MON | 03/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| TUE | 04/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| WED | 05/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| THU | 06/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| FRI | 07/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| SAT | 08/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| SUN | 09/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| MON | 10/8/09 | ALL | 0000--2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| TUE | 11/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| WED | 12/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| THU | 13/8/09 | ALL | 0000-2400 | 24 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| FRI | 14/8/09 | ALL | 0000-1600 | 16 | 00 | VSL. @ F.W.BUOY, AWT INTELS PAYMENT BY RECEIVERS/BERTH. |
| | | ALL | 1600-1910 | 03 | 10 | VSL. LEFT F.W.BUOY, PROCEEDING TO BONNYTOWN ANCHORAGE. |
| | | ALL | 1910-2400 | 05 | 10 | VSL. @ BONNY TOWN ANCHORAGE, AWT. DAYBREAK/DAYLIGHT. |
| SAT | 15/8/09 | ALL | 0000-0950 | 09 | 50 | VSL. @ BONNYTOWN ANCHORAGE. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | 0950-1225 | 03 | 35 | POB/PROCEDING TO ONNE |
| | | | 1225-1330 | | 55 | FREE PRATIQUE GRANTED |
| | | | 1330-1430 | 01 | 00 | CUSTOMS BREAK-BULK |
| SAT | 15/8/09 | ALL | 1430-1630 | 02 | 00 | WORK ARRANGEMENT/UNLASHING OF CARGO |
| | | 3 | 1630-1650 | - | 20 | DISCHARGING |
| | | ALL | 1650-1730 | - | 40 | RAINFALL |
| | | 3 | 1730-2400 | 06 | 30 | DISCHARGING |
| | | 2 | 1430-2150 | 07 | 20 | ELECTRIC CRANE DEFECT |
| | | 2 | 2150-2400 | 03 | 10 | DISCHARGING |
| | | 1 | 1430-2400 | 10 | 30 | CRANE DEFECT |
| SUN | 16/8/09 | 2/3 | 0000-0630 | 06 | 30 | DISCHARGING |
| | | ALL | 0630-1120 | 04 | 50 | RAINFALL |
| | | 2/3 | 1120-1315 | 01 | 55 | DISCHARGING |
| | | ALL | 1315-1430 | 01 | 15 | RAINFALL |
| | | 2/3 | 1430-1605 | 01 | 35 | DISCHARGING |
| | | ALL | 1605-2030 | 04 | 25 | RAINFALL |
| | | 1/2/3 | 2030-2400 | 03 | 30 | DISCHARGING |
| MON | 17/8/09 | ALL | 0000-1210 | 12 | 10 | RAINFALL |
| | | 1/2/3 | 1210-1440 | 02 | 30 | DISCHARGING |
| | | 3 | 1430-1440 | | 10 | FORK LIFT LOWERERD INTO HOLD |
| | | ALL | 1440-1535 | - | 50 | RAINFALL |
| | | 1/2/3 | 1535-2105 | 05 | 35 | DISCHARGING |
| | | ALL | 2105-2400 | 02 | 55 | RAINFALL |
| TUE | 18/8/09 | ALL | 0000-0040 | - | 40 | RAINFALL |
| | | 4 | 0040-0300 | 02 | 20 | AWT. REC. TRUCKS |
| | | 3 | 0040-0300 | 02 | 20 | DISCHARGING |
| | | 3 | 0300-0700 | 04 | 00 | AWT. REC. TRUCKS |
| | | 2 | 0040-0420 | 03 | 40 | DISCHARGING |
| | | 2 | 0420-0700 | 02 | 40 | AWT. REC. TRUCKS |
| | | ALL | 0700-1210 | 03 | 10 | RAINFALL |
| | | 1 | 1210-1605 | 03 | 55 | DISCHARGING |
| | | 1 | 1605-1610 | - | 10 | FORK LIFT OUT OF HOLD |
| | | 1 | 1610-2225 | 06 | 15 | DISCHARGING |
| | | 3 | 1210-1420 | 02 | 10 | DISCHARGING |
| | | 3 | 1420-1430 | - | 10 | FORK LIFT INTO HOLD |
| | | 3 | 1430-2225 | 07 | 55 | DISCHARGING |
| | | 2 | 1210-1950 | 07 | 40 | DISCHARGING |
| | | 2 | 1950-1955 | - | 05 | FORK LIFT LOWERED INTO HOLD |
| | | 2 | 1955-2225 | 02 | 30 | DISCHARGING |
| | | ALL | 2225-2400 | 01 | 35 | RAINFALL |

MASTER REMARK'S: on 15.08.09. between 14.30 – 24.00.

hold no 1 ready to work, but stevedores worked only 2 gangs.

M/. TEOS

KINGSTOWN

| | | | | | | |
|---|---|---|---|---|---|---|
| WED | 19/08/9 | ALL | 0000-0330 | 03 | 30 | RAINFALL |
| | | ALL | 0330-0800 | 04 | 30 | AWT. REC. TRUCKS. |
| | | 2 | 0800-0900 | 01 | 00 | DISC HARGING |
| | | 2 | 0900-0930 | - | 30 | CHANGE OF FORK LIFT |
| | | 2 | 0930-1040 | - | 50 | DISCHARGING |
| | | 1 | 1040-1155 | - | 25 | DISCHARGING |
| | | 2/3 | 1155-1315 | 01 | 20 | DISCHARGING |
| | | ALL | 1315-1415 | 01 | 00 | RAINFALL |
| | | 1/2/3 | 1415-1630 | 02 | 15 | DISCHARGING |
| | | ALL | 1630-1910 | 02 | 40 | RAINFALL |
| | | 1/3 | 1910-2200 | 02 | 50 | DISCHARGING |
| | | 1/2/3 | 2200-2400 | 02 | 00 | AWT. REC. TRUCKS |
| THU | 20/08/9 | 2 | 0000-0200 | 02 | 00 | AWT. REC. TRUCKS |
| | | 2 | 0200-0250 | - | 50 | DISCHARGING |
| | | 3 | 0200-0250 | - | 50 | AWT. REC. TRUCKS |
| | | 2/3 | 0250-0330 | - | 40 | DISCHARGING |
| | | 2/3 | 0330-0425 | - | 55 | AWT. REC. TRUCKS |
| | | ALL | 0425-1900 | 14 | 35 | RAINFALL |
| | | 2/3 | 0900-1145 | 02 | 45 | OPENING OF HATCH COVER |
| | | 2 | 1145-1615 | | | DISCHARGING |
| | | ALL | 1615-1630 | | 15 | RAIN |
| | | 2 | 1630-2100 | 04 | 30 | AWAITING OPENING OF HATCH TWIN DECK |
| | | 3 | 1630-2400 | 07 | 30 | DISCHARGING |
| | | 2 | 2100-2400 | 03 | 00 | DISCHARGING |
| FRI | 21/08/9 | 2/3 | 0000-0230 | 02 | 30 | DISCHARGING |
| | | 2/3 | 0230-0430 | 02 | 00 | AWT. REC. TRUCKS |
| | | 2/3 | 0430-0615 | 01 | 45 | DISCHARGING |
| | | 2/3 | 0615-0630 | | 15 | AWT. REC. TRUCKS |
| | | ALL | 0630-1420 | 07 | 50 | AWT. SHIFTING OF VSL. |
| | | 2/3 | 1420-1430 | - | 10 | AWT. OPENING OF HATCH COVER |
| | | 2/3 | 1430-1555 | 01 | 25 | DISCHARGING |
| | | ALL | 1555-1615 | - | 20 | ARRANGMENT TO SHIFT VSL. BACKWARD |
| | | ALL | 1615-1700 | - | 45 | SHIFTING OF VSL. BACKWARD |
| | | 3 | 1700-1820 | 01 | 20 | AWAITING LABOUR |
| | | 3 | 1820-1840 | - | 20 | DISCHARGING |
| | | 2 | 1820-1840 | - | 20 | AWAITING LABOUR |
| | | ALL | 1840-2035 | 01 | 55 | RAINFALL |
| | | 2/3 | 2035-2055 | - | 20 | DISCHARGING |
| | | ALL | 2055-2400 | 03 | 05 | RAINFALL |
| SAT | 22/08/9 | ALL | 0000-1145 | 11 | 45 | HATCH COVER DEFECT |

MASTER REMARK'S: ON 20.08.09. between 09.00-11.45-discharging

— " — between 16.30-21.00. -Awaiting

Skips crew to open hatch N°2

T/D. HEAVY RAIN

MYTEOS

KINGSTOWN

| | | ALL | 1145-1205 | - | 20 | OPENING OF HATCH |
|---|---|---|---|---|---|---|
| | | ALL | 1205-1225 | - | 20 | RAINFALL |
| | | ALL | 1225-1235 | - | 10 | OPENING OF HATCH |
| SAT | 22/08/9 | 2/3 | 1235-1350 | 01 | 15 | DISCHARGING |
| | | ALL | 1350-1535 | 01 | 45 | RAINFALL |
| | | 2 | 1535-1830 | 02 | 55 | DISCHARGING |
| | | 3 | 1535-2000 | 04 | 25 | DISCHARGING |
| | | 2 | 1830-2130 | 03 | 00 | AWT. REC. TRUCKS |
| | | 2 | 2130-2200 | - | 30 | DISCHARGING |
| | | 2 | 2200-2400 | 02 | 00 | AWT. REC. TRUCKS |
| | | 1 | 1530-2045 | 05 | 15 | DISCHARGING |
| | | 1 | 2045-2400 | 03 | 15 | AWT. REC. TRUCKS |
| | | 3 | 2000-2400 | 04 | 00 | AWT. REC. TRUCKS |
| SUN | 23/08/9 | 3 | 0000-0530 | 05 | 30 | AWT. REC. TRUCKS |
| | | 3 | 0530-0610 | - | 40 | DISCHARGING |
| | | 3 | 0610-0730 | 01 | 20 | AWT. REC. TRUCKS |
| | | 3 | 0730-1115 | 04 | 45 | DISCHARGING |
| | | 2 | 0730-1145 | 04 | 15 | AWT. REC. TRUCKS |
| | | ALL | 1145-1215 | - | 30 | RAINFALL |
| | | 2 | 1215-1515 | 03 | 00 | DISCHARGING |
| | | 2 | 1515-1620 | 01 | 05 | AWT. REC. TRUCKS |
| | | 3 | 1215-1620 | 04 | 05 | AWT. REC. TRUCKS |
| | | 2/3 | 1620-1800 | 01 | 40 | DISCHARGING |
| | | 2/3 | 1800-1900 | 01 | 00 | AWT. REC. TRUCKS |
| | | 2/3 | 1900-2025 | 01 | 25 | DISCHARGING |
| | | 2/3 | 2025-2400 | 03 | 35 | AWT. REC. TRUCKS |
| MON | 24/08/9 | 2 | 0000-0130 | 01 | 30 | DISCHARGING |
| | | 3 | 0000-0130 | 01 | 30 | AWT. REC. TRUCKS. |
| | | ALL | 0130-0430 | 03 | 00 | RAINFALL |
| | | 3 | 0430-0540 | 01 | 10 | DISCHARGING |
| | | 3 | 0430-0530 | 01 | 00 | AWT. REC. TRUCKS |
| | | 2 | 0540-0755 | 02 | 15 | AWT. REC. TRUCKS |
| | | 3 | 0540-0755 | 02 | 15 | DISCHARGING |
| | | ALL | 0755-1010 | | | RAINFALL |
| | | 3 | 1010-1150 | 01 | 40 | DISCHARGING |
| | | 2 | 1010-1035 | - | 25 | AWT. REC. TRUCKS |
| | | 3 | 1150-1235 | - | 45 | AWT. REC. TRUCKS |
| | | 2 | 1035-1355 | 03 | 20 | AWT. REC. TRUCKS |
| | | 3 | 1235-1405 | 01 | 30 | DISCHARGING |
| | | 3 | 1405-1700 | 02 | 55 | AWT. REC. TRUCKS |
| | | 2 | 1355-1440 | - | 45 | DISCHARGING |
| | | 2 | 1440-1700 | 02 | 20 | AWT. REC. TRUCKS |
| | | ALL | 1700-1930 | 02 | 30 | STEVEDORES MEAL HOUR |
| | | 2/3 | 1930-1945 | - | 15 | DISCHARGING |

MASTER REMARK'S : on 22.08.09 at 00.00 to 07.00. waiting truck.
07.00 – 11.45. hatch cover defect



MV TEOS
KINGSTOWN

| | | | | | | |
|---|---|---|---|---|---|---|
| SAT | 29/08/9 | 2 | 0405-0500 | - | 55 | POSITIONING OF CARGO FOR DISCHARGE |
| | | 1/3 | 0400-0625 | 02 | 25 | DISCHARGING |
| | | 2 | 0500-0625 | 01 | 25 | DISCHARGING |
| | | ALL | 0625-0815 | | | RAINFALL |
| | | 1/2/3 | 0815-0905 | - | 50 | DISCHARGING |
| | | ALL | 0905-0945 | - | 40 | RAINFALL |
| | | 1/2/3 | 0945-1015 | - | 30 | DISCHARGING |
| | | ALL | 1015-1110 | | | RAINFALL |
| | | 1/2/3 | 1110-1125 | - | 15 | DISCHARGING |
| | | ALL | 1125-1210 | - | 45 | RAINFALL |
| | | 1 | 1210-1620 | 04 | 10 | DISCHARGING/HATCH COMPLETED |
| | | 3 | 1210-1610 | 04 | 00 | DISCHARGING/HATCH COMPLETED |
| | | 2 | 1210-1745 | 04 | 35 | DISCHARGING |
| | | ALL | 1745-1830 | - | 45 | RAINFALL |
| | | 2 | 1830-2220 | 03 | 50 | AWT. STEVEDORES |
| | | 2 | 2220-2315 | 01 | 15 | VSL. COMPLTED DISCHARGE |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

MV TEOS
KINGSTOWN
........................................
MASTER STAMP & SIGN

........................................
AGENT STAMP & SIGN

| | | ALL | 1145-1205 | - | 20 | OPENING OF HATCH |
|---|---|---|---|---|---|---|
| | | ALL | 1205-1225 | - | 20 | RAINFALL |
| | | ALL | 1225-1235 | - | 10 | OPENING OF HATCH |
| SAT | 22/08/9 | 2/3 | 1235-1350 | 01 | 15 | DISCHARGING |
| | | ALL | 1350-1535 | 01 | 45 | RAINFALL |
| | | 2 | 1535-1830 | 02 | 55 | DISCHARGING |
| | | 3 | 1535-2000 | 04 | 25 | DISCHARGING |
| | | 2 | 1830-2130 | 03 | 00 | AWT. REC. TRUCKS |
| | | 2 | 2130-2200 | - | 30 | DISCHARGING |
| | | 2 | 2200-2400 | 02 | 00 | AWT. REC. TRUCKS |
| | | 1 | 1530-2045 | 05 | 15 | DISCHARGING |
| | | 1 | 2045-2400 | 03 | 15 | AWT. REC. TRUCKS |
| | | 3 | 2000-2400 | 04 | 00 | AWT. REC. TRUCKS |
| SUN | 23/08/9 | 3 | 0000-0530 | 05 | 30 | AWT. REC. TRUCKS |
| | | 3 | 0530-0610 | - | 40 | DISCHARGING |
| | | 3 | 0610-0730 | 01 | 20 | AWT. REC. TRUCKS |
| | | 3 | 0730-1115 | 04 | 45 | DISCHARGING |
| | | 2 | 0730-1145 | 04 | 15 | AWT. REC. TRUCKS |
| | | ALL | 1145-1215 | - | 30 | RAINFALL |
| | | 2 | 1215-1515 | 03 | 00 | DISCHARGING |
| | | 2 | 1515-1620 | 01 | 05 | AWT. REC. TRUCKS |
| | | 3 | 1215-1620 | 04 | 05 | AWT. REC. TRUCKS |
| | | 2/3 | 1620-1800 | 01 | 40 | DISCHARGING |
| | | 2/3 | 1800-1900 | 01 | 00 | AWT. REC. TRUCKS |
| | | 2/3 | 1900-2025 | 01 | 25 | DISCHARGING |
| | | 2/3 | 2025-2400 | 03 | 35 | AWT. REC. TRUCKS |
| MON | 24/08/9 | 2 | 0000-0130 | 01 | 30 | DISCHARGING |
| | | 3 | 0000-0130 | 01 | 30 | AWT. REC. TRUCKS. |
| | | ALL | 0130-0430 | 03 | 00 | RAINFALL |
| | | 3 | 0430-0540 | 01 | 10 | DISCHARGING |
| | | 3 | 0430-0530 | 01 | 00 | AWT. REC. TRUCKS |
| | | 2 | 0540-0755 | 02 | 15 | AWT. REC. TRUCKS |
| | | 3 | 0540-0755 | 02 | 15 | DISCHARGING |
| | | ALL | 0755-1010 | | | RAINFALL |
| | | 3 | 1010-1150 | 01 | 40 | DISCHARGING |
| | | 2 | 1010-1035 | - | 25 | AWT. REC. TRUCKS |
| | | 3 | 1150-1235 | - | 45 | AWT. REC. TRUCKS |
| | | 2 | 1035-1355 | 03 | 20 | AWT. REC. TRUCKS |
| | | 3 | 1235-1405 | 01 | 30 | DISCHARGING |
| | | 3 | 1405-1700 | 02 | 55 | AWT. REC. TRUCKS |
| | | 2 | 1355-1440 | - | 45 | DISCHARGING |
| | | 2 | 1440-1700 | 02 | 20 | AWT. REC. TRUCKS |
| | | ALL | 1700-1930 | 02 | 30 | STEVEDORES MEAL HOUR |
| | | 2/3 | 1930-1945 | - | 15 | DISCHARGING |

MASTER REMARK'S: on 22.08.09 at 00.00 to 07.00. waiting truck.
07.00 -11.45. hatch cover defeet


MV TEOS
KINGSTOWN

| | | ALL | 1945-2205 | | | RAINFALL |
|---|---|---|---|---|---|---|
| | | 2/3 | 2205-2400 | 01 | 55 | DISCHARGING |
| TUE | 25/08/9 | ALL | 0000-0100 | 01 | 00 | STEVEDORES MEAL HOUR |
| | | 2/3 | 0100-0315 | 02 | 15 | DISCHARGING |
| | | 2/3 | 0315-0440 | 01 | 25 | AWT. REC. TRUCKS |
| | | 2 | 0440-0510 | - | 30 | DISCHARGING |
| | | 3 | 0440-0510 | - | 30 | AWT. REC. TRUCKS |
| | | 2 | 0510-0530 | - | 20 | AWT. REC. TRUCKS |
| | | ALL | 0530-0730 | 02 | 00 | CHANGE OVER DUTY |
| | | ALL | 0730-1055 | 03 | 20 | RAINFALL |
| | | 2/3 | 1055-1200 | 01 | 05 | DISCHARGING |
| | | ALL | 1200-1300 | 01 | 00 | STEVEDORES MEAL HOUR |
| | | 2 | 1300-1455 | 01 | 45 | DISCHARGING |
| | | 3 | 1300-1430 | 01 | 30 | DISCHARGING |
| | | 3 | 1430-1455 | - | 25 | AWT. REC. TRUCKS |
| | | 2/3 | 1455-1800 | 03 | 05 | DISCHARGING |
| | | ALL | 1800-1930 | 01 | 30 | CHANGE OVER DUTY |
| | | 2/3 | 1930-2010 | - | 40 | WORK ARRANGEMENT |
| | | 2/3 | 2010-2400 | 03 | 50 | DISCHARGING |
| WED | 26/08/9 | ALL | 0000-0100 | 01 | 00 | LABOUR MEAL HOUR |
| | | 2/3 | 0100-0240 | 01 | 40 | DISCHARGING |
| | | 2/3 | 0240-0350 | 01 | 10 | AWT. REC. TRUCKS |
| | | 1 | 0350-0410 | - | 20 | AWT. REC. TRUCKS |
| | | 2 | 0410-0420 | - | 10 | FORK LIFT LOWERED INTO HOLD |
| | | 2 | 0420-0500 | - | 40 | DISCHARGING |
| | | 2 | 0500-0530 | - | 30 | AWT. REC. TRUCKS |
| | | 3 | 0350-0530 | 01 | 40 | DISCHARGING |
| | | ALL | 0530-0730 | 02 | 00 | CHANGE OVER DUTY |
| | | ALL | 0730-0905 | 01 | 35 | AWT. REC. TRUCKS |
| | | ALL | 0905-1035 | 01 | 30 | RAINFALL |
| | | 2/3 | 1035-1105 | - | 30 | DISCHARGING |
| | | 2/3 | 1105-1200 | - | 45 | AWT. REC. TRUCKS |
| | | ALL | 1200-1300 | 01 | 00 | STEVEDORES MEAL HOUR |
| | | 2/3 | 1300-1430 | 01 | 30 | AWT. REC. TRUCKS |
| | | 2/3 | 1430-1520 | - | 50 | DISCHARGING |
| | | 2 | 1520-1545 | - | 25 | FORKLIFT OUT OF HOLD |
| | | 2 | 1545-1700 | 01 | 15 | AWT. REC. TRUCKS |
| | | 3 | 1430-1700 | 02 | 30 | DISCHARGING |
| | | ALL | 1700-1930 | 02 | 30 | CHANGE OVER DUTY |
| | | ALL | 1930-2000 | - | 30 | WORK ARRANGEMENT |
| | | 2/3 | 2000-2050 | - | 50 | DISCHARGING |
| | | ALL | 2050-2400 | 03 | 10 | RAINFALL |
| | | 2/3 | 2100-2400 | 03 | 00 | DISCHARGING |

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRANSCOM SHIPPING N.V.,                          :          09 CV _____
                                                 :
                    Plaintiff,                   :          ECF CASE
                                                 :
       - against -                               :
                                                 :
KYE INTERNATIONAL GENERAL TRADING LLC, :
                                                 :
                    Defendant.                   :
-------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut   )
                       )          ss: Southport
County of Fairfield    )

       Coleen A. McEvoy, being duly sworn, deposes and says:

       1.      I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANT IS NOT PRESENT IN THE SOUTHERN DISTRICT OF NEW YORK

       2.      I have attempted to locate the Defendant KYE INTERNATIONAL GENERAL

TRADING LLC within the Southern District of New York (hereinafter "SDNY").  As part of my

investigation to locate the Defendant within the SDNY, I checked the telephone company

information directory, as well as the white and yellow pages for New York listed on the Internet

or World Wide Web, and did not find any listing for the Defendant.  Finally, I checked the New

York State Department of Corporations' online database which showed no listings or registration

for the Defendant.

3.    I submit based on the foregoing that the Defendant cannot be found within the SDNY within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rule B").

### DEFENDANT'S PROPERTY MAY BE FOUND IN THE SDNY

4.    Upon information and belief, and also based upon payments made by the Plaintiff to the Defendant under the involved contracts which were sent by way of electronic funds transfers routed through New York intermediary banks, the Defendant has, or will have during the pendency of this action, tangible and intangible property as the same is defined under Rule B within the SDNY and subject to the jurisdiction of this Court, held in the hands of garnishees within the SDNY, which are believed to be due and owing to the Defendant.

5.    Upon information and belief, in the case of payments made by foreign parties, the vast majority of electronic funds transfers in U.S. dollars pass through banking/financial intermediaries located within the SDNY.

6.    Upon information and belief, Defendant has ongoing contractual obligations, or has had such obligations, that require it to make send / receive payments in U.S. dollars. Thus, the likelihood that the Defendant will send / receive future payments through one of the banks named in Schedule "A" to the proposed ORDER DIRECTING CLERK TO ISSUE PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AND APPOINTING PROCESS SERVER is high and satisfies the reasonable belief threshold. The garnishee banks listed are limited to ones who regularly act as "intermediary banks" to effect wire transfers in U.S. dollars between a foreign originating bank and a foreign beneficiary bank.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

7.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil

Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy,

Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur, Darin L. Callahan or any other

partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server

employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex

Parte Order and Process of Maritime Attachment and Garnishment, together with any

interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon

information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account

of, the Defendant.

8.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and

Garnishment with all deliberate speed so that it may be fully protected against the potential of

being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the

Defendant.

9.    To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involve a restraint of physical property,

it is submitted that there is no sound reason to require that the service be effected by the Marshal

as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the

various garnishees to be identified in the writ and the required use of a Marshal will cause delay,

additional expense and provide no benefit in respect of the purpose for which Plaintiff has filed

this action.

3

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within the SDNY. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the proposed Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

12.    Several garnishee banks, including, but not limited to, J.P. Morgan Chase, BNP Paribas, Societe Generale, have refused to consent to deem service of Rule B Orders and Writs continuous which will necessitate parties to serve these garnishees numerous times throughout any given day.  In seeking an Ex Parte Order deeming service continuous the Plaintiff relies on the holding on *DNSD Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) which, in upholding the propriety of an Ex Parte Order which deemed service continuous, stated as follows:

> Clearly, the goal of the continuous service provision contained in the order signed by Judge Karas in this case and by Judge Scheindlin in *Ulisses* was *not* to undermine the Second Circuit's prohibition on the attachment of after-acquired

4

property announced in *Reibor*. Rather, the continuous service provision 'was intended to avoid the absurdity, security problems, and inconvenience of requiring the garnishee banks to accept service repeatedly throughout the day.' *Ulisses, 415 F. Supp. 2d at 328*. Indeed, the absence of such a continuous service provision – either by court order or by consent from the garnishees – would inevitably result in the posting of lawyers and/or process servers at bank offices around the clock in an attempt to capture EFTs at the precise moment of their arrival. Defendant's narrow reading of *Reibor*, would, in effect, overrule the Second Circuit's later holding in *Winter Storm* – something the Second Circuit expressly declined to do in *Aqua Stoli* – by making it virtually impossible to attach EFTs in Rule B cases.

13.     The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein. As a result, and in order to give effect to the Rule B relief requested herein, the Plaintiff request that the Court issue an Ex Parte Order deeming service continuous.

Dated: October 7, 2009

_____
Coleen A. McEvoy

Sworn and subscribed to before me
this 7th day of October, 2009

_____
Notary Public/Commissioner of the Superior Court

Mary E. Fedorchak
Notary Public-Connecticut
My Commission Expires
November 30, 2011